UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **MARY RUTH MARTINEZ-CHEN,** | § | |
| | § | |
| **Plaintiff,** | § | |
| **v.** | § | **CIVIL ACTION NO. H-06-44** |
| | § | |
| **AMERICAN HEART ASSOCIATION,** | § | |
| **INC.,** | § | |
| | § | |
| **Defendant.** | § | |

## MEMORANDUM AND ORDER

Pending before the Court are Plaintiff's Motion for Notice to Potential Class Members (Doc. # 14) and Defendant's Motion to Strike Class Allegations (Doc. # 16). Plaintiff filed this suit as a collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b). The FLSA authorizes individuals to assert such claims, on behalf of themselves and of other employees similarly situated, for their employers' wrongful failure to pay overtime wages. *Id.* Plaintiff now seeks to compel Defendant to provide a list of all employees who may be potential class members, and requests the Court to approve the issuance of notice to each of these employees, allowing them to "opt in" to this suit. *See id.* ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."). Defendant argues that discovery and notice are inappropriate because Plaintiff has failed to produce any evidence that similarly situated employees exist, and that Plaintiff's class allegations should therefore be stricken from her Complaint.

## I. Legal Standard

While the Fifth Circuit has declined to endorse any particular standard for evaluating requests for notice to potential class members under the FLSA, it has affirmed district court

decisions utilizing the lenient standard adopted by the United States District Court for the District of New Jersey in *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987).  *See, e.g.*, *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213-16 (5th Cir. 1995), *overruled on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003).  The two-step *Lusardi* approach requires a court, at the first stage, to decide whether notice of the action should be given to potential class members.  *Id.* at 1213-14.  The court's decision at this stage is usually based on the pleadings and affidavits that have been submitted, and is made using a "fairly lenient standard, [which] typically results in 'conditional certification' of a representative class."  *Id.* at 1214.  At the second stage of the *Lusardi* approach, which is usually prompted by a defendant's motion for decertification after some or all discovery has been completed, a court considers additional evidence submitted by the parties in determining whether to decertify the class on the ground that its members are not similarly situated.  *Id.*

Even under the lenient standard of the first stage, a plaintiff must set forth "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan" that violated the law. *Id.* at 1214 n.8 (citation omitted).  Before authorizing notice to potential class members, a court "should satisfy itself that there are other employees of the [employer] who desire to 'opt-in' and who are 'similarly situated' with respect to their job requirements and with regard to their pay provisions."  *Dybach v. Florida Dep't of Corr.*, 942 F.2d 1562, 1567 (11th Cir. 1991); *see also Hunter v. Sprint Corp.*, 346 F. Supp. 2d 113, 119 (D.D.C. 2004) (determining whether employees were similarly situated, for purposes of an FLSA collective action, on the basis of such factors as:  "(1) whether they all worked in the same corporate department, division and location; (2) whether they all advanced similar claims; and (3) whether they sought substantially the same form of relief") (citation omitted).  Unsupported allegations that FLSA violations were widespread and that other similarly situated employees

exist are insufficient to warrant notice to potential class members.  *Haynes v. Singer Co.*, 696 F.2d 884, 887 (11th Cir. 1983).

## II. Analysis

In this case, Plaintiff has failed to produce evidence that there are similarly situated potential plaintiffs to whom class notice should issue.  First, although Plaintiff describes her own job duties, salary, and hours, she provides no factual details as to the particular duties, payment provisions, or hours of any other employees.  In an affidavit attached to her reply, Plaintiff testifies that she worked for Defendant as a "health initiative trainer/health initiative director," and was paid a salary of $42,000 annually (or $21.88 per hour).[1]  Mary Ruth Martinez-Chen Aff. ¶¶ 2-3.  Plaintiff's primary job duties included implementing stroke prevention in various communities, through workshops, presentations, and health fairs.  Compl. ¶ 6.  Plaintiff testifies that she worked an average of sixty-eight hours per week while she was employed by Defendant, and that she was not paid for any hours that she worked over forty hours per week.  Martinez-Chen Aff. ¶ 3.

> With respect to other employees, Plaintiff testifies that:
>
> I am aware of many nonexempt, health initiative trainers/health initiative directors employed by [Defendant] who were denied overtime pay.  There are three sections of health initiative trainers/health initiative directors (defibrillator, stroke, and minority health initiatives) who were employed by [Defendant], and all were denied compensation for overtime hours worked and performed similar work tasks both on and off the clock.

Martinez-Chen Aff. ¶ 5.  Plaintiff does not, however, specify what particular duties were performed by these other health initiative trainers/health initiative directors, what salaries or

---

[1] In her Complaint, however, Plaintiff states that she worked for Defendant as a "program presenter," and that she was paid a salary of $43,000 annually (or $20.67 per hour).  Compl. ¶ 6.  Defendant states that Plaintiff worked as a Health Initiatives Director, and that no position of "health initiatives trainer" or "program presenter" existed during the time of Plaintiff's employment with Defendant.  Midge Epstein, Executive Vice President, Cultural Health Initiatives, American Heart Association, Inc., Aff. ¶ 3.  The Court will consider all of these various titles to refer to the position held by Plaintiff.

wages they were paid, or what hours they kept.  It is unclear from Plaintiff's Complaint and affidavit, for example, whether any other employees worked as many as sixty-eight hours per week, or twenty-eight overtime hours, as Plaintiff states that she did.  *See* Martinez-Chen Aff. ¶ 3.  Plaintiff's conclusory statement that she is aware of other employees is insufficient to demonstrate that other employees are similarly situated.

On the contrary, evidence presented by Defendant in response to Plaintiff's motion for notice indicates that Defendant's employees had varying job duties, hours, and levels of discretion, and that the employees were located in different local offices throughout the country. Epstein Aff. ¶¶ 14-15 ("The job duties that each Health Initiatives Director performs, the amount of time that each spends performing such duties, and each person's level of discretion varies. The Health Initiatives Directors all work in different local offices throughout the country."). Defendant further explains that, "[b]ecause each office has different needs and issues, the duties that a Health Initiatives Director actually performs on a day-to-day basis and the time that each spends performing any particular duty will vary, sometimes substantially, among the Health Initiatives Directors."  Epstein Aff. ¶ 16.  In light of these substantial differences, as well as Plaintiff's failure to point to even a single employee with similar responsibilities, hours, salary, and geographic location, Plaintiff has not met her burden of demonstrating the existence of similarly situated potential class members.

Plaintiff further asserts that class notice is appropriate because "[t]here was a uniform policy at [Defendant] whereby all health initiative trainers/health initiative directors were not paid time and one-half for their overtime hours worked."  Martinez-Chen Aff. ¶ 5.  Aside from this unsubstantiated statement, however, Plaintiff has not produced any evidence of such a uniform policy of violating the FLSA.  She does not provide any evidence that other employees worked overtime, nor does she identify any particular employee, other than herself, who has

been the victim of such a policy.  Additionally, the differences in employees' job duties, hours, discretion, and geographic location tend to contradict Plaintiff's statement that all of these employees were subject to a uniform policy by Defendant.

Finally, the parties' dispute as to Plaintiff's status as exempt or non-exempt under the FLSA counsels against authorizing notice to potential class members.  Plaintiff claims that she was a non-exempt employee, asserting that she "was not allowed to exercise independent judgment in completing [her] job responsibilities and tasks."   Martinez-Chen Aff. ¶ 6. Defendant, on the contrary, contends that Plaintiff was "responsible for planning events and exercising her independent judgment in determining how to meet the outreach goals she had set at the local level and partnering with other employees to develop programs and initiatives." Epstein Aff. ¶ 8.  Defendant further asserts that, despite the variations in the duties of Health Initiatives Directors throughout the country, these jobs have always included certain responsibilities, including "customarily and regularly exercising independent judgment with respect to the means to achieve the goals set at the local, state and national levels."  Epstein Aff. ¶ 12.   Defendant acknowledges, however, that each Health Initiatives Director's level of discretion varies.  Epstein Aff. ¶ 14.

As other courts have recognized, "[d]etermining whether an employee is exempt is extremely individual and fact-intensive, requiring a detailed analysis of the time spent performing administrative duties and a careful factual analysis of the full range of the employee's job duties and responsibilities."  *Mike v. Safeco Ins. Co. of Am.*, 274 F. Supp. 2d 216, 220 (D. Conn. 2003) (quotations and citation omitted) (finding that potential plaintiffs were not similarly situated for purposes of an FLSA collective action because the evidence regarding their exempt status would be specific to each).  The individualized nature of the exemption analysis

will be significant in this case, on account of the varying job duties, hours, levels of discretion, and geographic locations of Defendant's Health Initiatives Directors.

In light of this individualized and fact-intensive inquiry, which will be required of Plaintiff's job responsibilities and circumstances in this case, and because Plaintiff has failed to produce evidence of similarly situated employees or of a uniform, unlawful policy, conditional class certification and notice is inappropriate.  Similarly, because Plaintiff has not produced facts in support of her class allegations, they should be stricken from her Complaint.

**III. Conclusion**

Plaintiff's Motion for Notice to Potential Class Members is **DENIED** without prejudice to later refiling.  Should facts arise as the case advances, which would warrant the issuance of notice to similarly situated potential class members, Plaintiff may file a new motion for notice with the Court.   At this time, however, Defendant's Motion to Strike Class Allegations is **GRANTED**, and Plaintiff's class allegations are stricken from her Complaint.

**IT IS SO ORDERED**.

**SIGNED** this 18th day of August, 2006.

_____
KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

TO INSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS ORDER SHALL
FORWARD A COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY
EVEN THOUGH THEY MAY HAVE BEEN SENT ONE BY THE COURT